WILLIAM H. JOHNSON AND THOMAS COLLINS v. THE FISHER & WILSON COMPANY (A CORPORATION) AND NATHAN D. FISHER.

*Settlement—Fraud—Rescission.*

1. It cannot be true, as a legal proposition, that, in every case where there is an honest difference of opinion in reference to the terms of the contract, or where the buyer, in good faith, objects to the quality of goods purchased as not being up to the standard of the contract of purchase, upon adjustment of differences and settlement the seller may, with an intention of instituting a suit upon a claim of being defrauded in the settlement thereafter to be made, proceed to such adjustment, and to a compromise and settlement of the demand, and recover from the purchaser damages for an alleged fraud in the settlement.

2. Fraud and overreaching in the compromise and settlement of claims have been regarded as affording grounds for the recovery of damages in actions of trespass on the case: but no court has gone so far as to hold that a settlement voluntarily sought and made, where there has been no concealment of facts and no misrepresentations which have induced a party to enter into the compromise, and where there has been an honest difference of opinion as to the subject-matter compromised, furnishes a ground for such an action.

Error to Alpena. (Kelley, J.) Argued April 22, 1890. Decided May 2, 1890.

Case. Plaintiffs bring error. Affirmed. The facts are stated in the opinion.

*Turnbull & Dafoe* and *Frank Emerick,* for appellants, contended:

1. Fraud consists in deception practiced in order to induce another to part with property or to surrender some legal right, and which accomplishes the end designed; citing Cooley, Torts, 474, and cases cited.

2. Plaintiffs had the legal right, under the circumstances, to affirm the settlement, and sue for the fraud practiced in bringing it about; citing *Jewett v. Petit,* 4 Mich. 513; *Walsh v. Sisson,* 49 Id. 424; *Pangborn v. Ins. Co.,* 67 Id. 683.

3. It is a legal fraud for a party to obtain a settlement or compromise from another by unfair means, as by acting oppressively or taking undue advantage, or by asserting claims which the party knows to be wrongful; citing *Headley v. Hackley,* 50 Mich. 43.

4. If the defendants knowingly asserted an unjust claim, and induced plaintiffs to compromise, or if it was a scheme on their part to beat plaintiffs out of what was their just due, they were guilty of fraud; citing *Nash v. Lumber Co.,* 75 Mich. 346

5. The parties to a compromise must assert their claims in good faith, and there must be no fraud or undue advantage; citing *Kercheval v. Doty,* 31 Wis. 486; *Zimmer v. Becker,* 66 Id. 531.

*Shields & McNamara,* for defendants, contended:

1. It is admitted by the plaintiffs that at the time of this settlement they knew every fact connected with the claimed fraud of the defendants, as fully as at the time of the trial. The settlement was therefore absolutely conclusive; citing *Mayhew v. Ins. Co.,* 23 Mich. 105; *Hull v. Swartwout,* 29 Id. 249; *Hart v. Gould,* 62 Id. 262; *Reid v. Ladue,* 66 Id. 22.

CHAMPLIN, C. J. The declaration in this case consists of two counts,—one in case and the other in trover.

The first count alleges that the plaintiffs were engaged in the lumber business at Alpena, and that the defendants, one a corporation duly organized, purchased of them two cargoes of lumber at the following prices, viz., for the grade of clear, $36; for the grade of common, $16.25; for the grade of shipping culls, $8.25; and for the grade of mill culls, $6,—per 1,000 feet, to be paid for 90 days from the date of shipment, and that the defendants on

November 3, 1888, caused a portion of the lumber to be shipped to the corporation at Cleveland upon the barge Schnoor, viz., 2,081 feet of clear, 187,131 feet of common, 81,265 feet of shipping culls, and 10,120 feet of mill culls, and defendants on November 5, 1888, caused the balance of said lumber to be inspected and shipped to said corporation upon the barge Light Guard,—399 feet of clear, 62,210 feet of common, 28,426 feet of shipping culls, and 6,445 of mill culls.

That, after defendants caused the lumber to be inspected and shipped as aforesaid, with intent to cheat and defraud the plaintiffs out of portions of the lumber and out of pay for said lumber, they falsely and fraudulently pretended that they had not purchased said lumber, and that said lumber was of an inferior grade or quality, and that defendants had not caused said lumber to be inspected and shipped, and that said lumber had not been inspected fairly and correctly, and with like intent falsely and fraudulently refused to accept and pay for said lumber at the said contract prices, and with like intent falsely and fraudulently refused to allow the said lumber shipped upon the said barge Light Guard to be landed or stored upon their dock, and plaintiffs were obliged to take just what they could get for this said load, and resold it at a great loss.

"And plaintiffs further say that, in truth and in fact, the defendants had purchased said lumber as aforesaid, that said lumber was not of an inferior grade or quality, that defendants had caused said lumber to be inspected and shipped as aforesaid, and that said lumber had been inspected fairly and correctly, all of which the defendants well knew.

"And plaintiffs say that defendants represented that all they would pay plaintiffs for all of said lumber and their said damages was $3,426.03, and insisted and compelled plaintiffs to give release or receipts in full for all demands

before the defendants would pay plaintiffs this said sum; and the plaintiffs did, on or about March 9, 1889, receive this said sum of defendants, and executed and gave said release or receipts, and made said compromise, as demanded of them by defendants as aforesaid.

"And plaintiffs allege that these said releases, receipts, compromise, and settlement were obtained by fraud, and that the defendants well knew at the time they paid plaintiffs said sum of money and obtained said receipt—made said compromise—that said defendants were justly indebted to plaintiffs in the sum of $4,300, and only set up said false and fraudulent pretenses and excuses for the purpose of cheating plaintiffs, and making them take less than what defendants well knew was then due them for said lumber and said damages; and the defendants then well knew that all of these said pretenses and excuses as aforesaid were unfounded, and were set up by them solely for the purpose of extorting from plaintiffs' necessities and situations a receipt in full, and a full acquittance of all of defendants' said liability to plaintiffs on account of said lumber transaction.

"And plaintiffs say that defendants falsely and fraudulently set up said excuses and pretenses after they had caused said lumber to be removed a long distance from plaintiffs' place of business, and to a place where it was very expensive for plaintiffs to take care of the same; and these said false and fraudulent excuses and pretenses were set up solely, by defendants for the fraudulent purpose of forcing plaintiffs to take less for said lumber than said contract price, and less than real value of said lumber, and that said actions of said defendants in refusing to accept and pay for said lumber was a scheme of fraud on their part to defraud and cheat plaintiffs out of portions of said lumber, or make and force them to take less than the value of said lumber, and, by the said fraudulent actions, doings, and pretenses of defendants, the plaintiffs were forced to take less than the said contract price, and less than its value, for portions of said lumber, and were forced and compelled to take the said sum aforesaid from defendants, and give the said receipt and make the said settlement.

"And plaintiffs say that, by the said actions and doings of defendants as aforesaid, plaintiffs have been deceived, defrauded, and cheated in this said lumber transaction

against defendants, and to compromise and settle in full, with defendants; and in accepting said sum of money and giving said receipt, and by means of the premises, the plaintiffs have been cheated out of a large sum of money, to wit, $1,000; and by means of the premises the plaintiffs have been cheated and defrauded out of a large portion of said lumber, to wit, 100,000 feet, which the said defendants have converted to their own use, to plaintiffs' damage of $1;000."

The plea was the general issue.

On the trial the plaintiffs showed by Edward H. Savage that in October, 1888, he was a member of the firm of W. H. Whittemore & Co., who were lumber inspectors at Bay City; that on October 21, he met Mr. N. D. Fisher, who was the main manager of defendant corporation, at a hotel in Alpena, and had a conversation with him, and told him of the Collins & Johnson stock and about the H. R. Morse stock of lumber, and told him the H. R. Morse stock of lumber was a good lot of lumber, that W. H. Whittemore & Co. had bought the lumber for $8.50, $16.50, and $36, and shipped it to Lockport for Ives-Jackson Lumber Company, and told him that he was pretty sure he could buy it for $8.25, $16.25, and $36; that this was the Collins & Johnson stock, and he told him, if he could get it for $8.25, and $16.25, to buy a cargo of it; that Mr. Fisher left Alpena that night upon the boat; that on the next day, Monday, he went over to Collins & Johnson's office, and had a talk with Johnson, and went with him and looked the lumber over, and asked him if he would take $8.25, $16.25, and $36. Finally Collins & Johnson came to him, and told him he could have the lumber for $8.25, $16.25, and $36, and he then wired Fisher that he had closed the trade. This telegram was afterwards produced and identified by the witness, and it reads as follows:

"Alpena, Mich., October 22, 1888.
"To N. D. Fisher:

"We will ship you a small cargo of C. & J. stock.
"W. H. Whittemore & Co."

Mr. Fisher replied to this by letter as follows:

"Cleveland, Ohio, Oct. 26, 1888.
"Messrs. W. H. Whittemore & Co., "Alpena, Mich.

"Gents—I rec'd your telegram at Cheboygan, saying you would send a small cargo of the Collins & Johnson stock. We may be able to put in one of our boats for it, and if not may send some other. The Schnoor is here now, and we may get her to go for it; and if so will wire you, and if not will advise you in a few days if one of our boats can take it or not.
"Yours truly,
"N. D. Fisher."

On the 27th and 28th, Fisher sent telegrams saying, in substance, that the boat sent was the Schnoor. The lumber was laden upon the Schnoor, and inspected by Savage for W. H. Whittemore & Co., who made a statement of the measurement and inspection as follows: Uppers, 2,081 feet; common, 187,131 feet; culls, 81,265 feet; mill culls, 10,120 feet. On November 6, 1888, plaintiffs received the following telegram:

"Cleveland, Ohio, Nov. 6.
"To Collins & Johnson:

"Cargo by Schnoor will have to be reinspected, if we receive it. You can choose from Boggs Brothers, Alpena, Martin & Schillerman, Cheboygan, or E. J. Vance & Co., at Bay City. Attend to it at once.
"The Fisher & Wilson Co."

On the same day, plaintiffs telegraphed defendants as follows:

"Nov. 6, 1888.
"To Fisher & Wilson Co., Cleveland:

"You gave W. H. Whittemore & Co. instructions, in

writing, to ship our lumber which was purchased by N. D. Fisher. What is the matter?

"COLLINS & JOHNSON."

The following correspondence then ensued:

"CLEVELAND, O., Nov. 6, 1888.

"MESSRS. JOHNSON & COLLINS:

"*Gents*—Yours by wire rec'd. We beg leave to say we never gave Mr. Savage written instructions to ship your stock. He was representing your stock to writer when in Alpena. I did not go to see it, as it was on Sunday night, and I left that night by boat; but, upon his representation of the quality and kind of stock, I told him we would try a small cargo. A cargo came, consigned to us from him on prop. Schnoor, but, instead of being 6-inch strips and wide boards, as represented, is a lot of coarse, promiscuous boards, and not what we want or bought; and, besides, the inspection we could not accept.

"Yours truly, N. D. FISHER."

"CLEVELAND, O., Nov. 6, 1888.

"MESSRS. COLLINS & JOHNSON, Alpena, Mich.

"*Gents*—A cargo of boards shipped for you by Savage to us on prop. Schnoor is not as represented by him, and the inspection is not satisfactory, and we will not take it under his inspection. We wire you to this effect, and name three inspection firms from which you can choose inspectors to rehandle the stock; otherwise, you can take the stock and make other disposition of it. It has been put on dock and must be removed at once, so please designate your choice at once.

"Yours truly, N. D. FISHER."

"CLEVELAND, O., Nov. 7, 1888.

"MESSRS. JOHNSON & COLLINS:

"*Gents*—Your two invoices of lumber on Schnoor rec'd. We had unloaded the Schnoor before we knew what the lumber was, or else we would not have received it. Your representative, Mr. Savage, represented to us an entirely different stock at $8.00, $15.75, and $36.00; and we bought of him one small cargo on four months, to be good 6-inch strips one-half, and good wide boards the other half. We find no such stock in the shipment, and we reject the entire lot; and you will please make disposition of it at once, and get it off our dock, as we

need the room.    Lumber on Light Guard cannot go onto our dock.

"Yours truly, N. D. FISHER."

"CLEVELAND, Ohio, Nov. 10, 1888.
"To JOHNSON & COLLINS:
"We want your lumber removed from our dock at once.

"FISHER & WILSON CO."

"ALPENA, November 10, 1888.
"FISHER & WILSON CO.:
"*Gentlemen*—Your telegrams and letters are at hand. We are very much surprised at their contents.    Mr. Savage has written you his understanding of the trade. We have sold this same stock this season at the same price, and got better inspection.    We understand by your letter of Oct. 26 to Whittemore that you authorized the purchase of the lumber on the terms, $8.25, $16.25, and $36.00, 90 days.    Your telegram to H. R. M. and letter, to our mind, clearly authorized the purchase of the lumber by Savage.    It seems to us that any differences should be settled with him, and not with us.

"COLLINS & JOHNSON."

"CLEVELAND, Nov. 12, 1888.
"MESSRS. JOHNSON & COLLINS:
"*Gents*—Yours 10th rec'd and noted.    What we bought of Mr. Savage was good strips and wide boards, under a very strong representation, and the price, $8.00, $15.75, $36.00, on four months' time.'    The stock is nothing that we bought, and is not what we want; and we would not buy such stock at over $11.50 per thousand, as we consider it not much better than box lumber.    We prefer to have it taken off our dock even at that; and, if you dispose of it and move at once, we will make no charge for dockage or moving it over our yard.    Mr. Morse wired us he had sold Savage, for us, 125 thousand of his stock at $8.00, $16,00, $36.00, which we supposed was to fill out the Schnoor's cargo; and we answered him we approved of it, but subsequently learned it was not on that cargo, and advised Mr. Morse we did not want it. We are sorry to give you any trouble, but we cannot submit to such imposition on the part of Mr. Savage.    We did not know you in the trade, and, if you wish to throw the matter on him, we have no objection. The

stock is not what we bought, and we have not touched it, and will not, but we want it out of our way.

"Yours truly, N. D. FISHER."

Mr. Collins testified in his own behalf that he wanted to see what authority Savage had to buy, and he showed him the letter from Fisher to W. H. Whittemore & Co. of date October 26, 1888, and that he relied upon this letter in making the sale; that he never had a personal interview with any of the defendants, and, if the plaintiffs had been defrauded or overreached in any way or manner, it consisted of, and is set forth in, the above letters and telegrams.

It appears that the parties did not come to an accommodation, and that, some time in the winter following or early spring, Mr. Comstock, of Alpena, their banker, visited Cleveland upon his own business, and plaintiffs requested him to see defendants and see what could be done,—to see what they were willing to do to effect a settlement. He saw Mr. Fisher, and tried to get Fisher to settle it up,—told him that he thought plaintiffs were willing to throw off something. Fisher claimed that they did not buy the lumber, and wanted them to come and take it away. He told Fisher that that was pretty hard for a man living so far away to do, advised them to fix it up in some way, and asked him if they could not afford to take it at half a dollar—or something like that—less, and settle it up. Fisher said, "No, the lumber was not worth that price," but finally said he would pay for it less one dollar and a half a thousand. Comstock told him he would submit the proposition to Collins when he got back. He did so, and they refused. After a while Collins went to Comstock, and told him they would take it. Comstock then wrote to defendants at Cleveland, stating, if they would send up a check for the amount less one dollar and a half a thousand, that Collins &

Johnson would take it. Fisher & Wilson Co. sent the check, and he showed it to Mr. Collins; and he said it was not right, and brought to him the bill, and it came to more,—some $20 or $25. There was a mistake made in carrying out one of the items. Comstock then sent the check back, explaining the mistake, and defendants returned another check for the amount that Collins said it should be. He delivered this check to Collins, who at the time signed the following receipt:

"CLEVELAND, O., Mar. 9, 1889.
"Received from the Fisher & Wilson Company three thousand four hundred and twenty-six dollars and three cents, in full of all accounts and demands to date.
"$3,426.03. JOHNSON & COLLINS."

Plaintiffs also introduced testimony tending to show that the lumber shipped on the Schnoor was of the inspection stated in the statement made by Savage, and that it was worth the prices sold for to defendants.

It further appears from the testimony of Mr. Collins that it was the intention of Collins & Johnson, before the settlement was made, to settle with the Fisher & Wilson Company upon the best terms they could get, and then to sue the Fisher & Wilson Company for the balance, and that they did not disclose such intention to the defendants. It was also claimed by the plaintiffs that the reason why they settled upon the terms they did was because they wanted to use the money in their business, and in order to get it were forced to make the settlement. But the fact of their financial stress was not communicated to defendants. Mr. Collins also testified that he supposed that when he took the money and gave the receipt the defendants had every reason to believe that it was a full settlement of all differences between plaintiffs and defendants.

It is proper to mention one other fact. The plaintiffs'

witness Savage did not agree to buy, as shown by his testimony, any mill culls. He bargained for shipping culls at $8.25, for common at $16.25, and for uppers at $36   The cargo shipped contained 10,120 feet of mill culls, for which plaintiffs claim $6 a thousand, and this was included in the bill  sent by plaintiffs to defendants.

Upon the foregoing facts, the question is whether the plaintiffs are entitled to maintain this action, grounded upon fraud committed by the defendants in making the settlement. The circuit judge held they were not, and directed a verdict for the defendants. We are of the same opinion. The defendants are not charged with any fraud in the purchase of the lumber, but with fraudulent conduct, after obtaining possession, to force the plaintiffs to an unjust compromise and settlement. We think the case is barren of any testimony whatever tending to show fraud on the part of the defendants. By their own testimony, the plaintiffs shipped mill culls to the defendants in the cargo which they neither authorized the firm of W. H. Whittemore to buy, nor which Savage, acting for the firm, did buy.

It cannot be true, as a legal proposition, that, in every case where there is an honest difference of opinion in reference to the terms of the contract, or where the buyer, in good faith, objects to the quality of goods purchased as not being up to the standard of the contract of purchase, upon adjustment of differences and settlement the seller may, with an intention of instituting a suit upon a claim of being defrauded in the settlement thereafter to be made, proceed to an adjustment of differences, and a compromise and settlement of the demand, and recover from the purchaser damages for an alleged fraud in the settlement. If this should be established as law in this and other states, it might make it quite embarrassing for merchants and dealers in this State who

purchase goods through brokers in Boston or New York, and who upon the receipt of the goods should find that they were not of the kind or quality bargained for, and who upon a settlement or compromise of the difficulty should find themselves, upon visiting those cities, sued or arrested for fraud in the settlement. The Boston or New York wholesale dealer would no doubt find but little difficulty in establishing by the broker who sold the goods that they were fully up to the contract, and the vendor could truthfully swear that he required the money for use in his business.

Fraud and overreaching in the compromise and settlement of claims have been regarded as affording grounds to recover damages in actions of trespass upon the case; but no court has gone so far as to hold that a settlement voluntarily sought and made, where there has been no concealment of facts and no misrepresentations which have induced a party to enter into the compromise, and where there has been an honest difference of opinion as to the subject-matter compromised, furnishes a ground for an action on the case for damages. None of the cases cited supports the contention of the plaintiffs under the facts of this case.

The judgment is affirmed.

The other Justices concurred.